**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH BROWN,** | § | |
| | § | Case No. 1:23-cv-1221 |
| Plaintiff, | § | |
| | § | Hon. |
| vs. | § | |
| | § | |
| **STEELCASE, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**COMPLAINT IN CIVIL ACTION**

Comes now Plaintiff, Elizabeth Brown, by and through her undersigned counsel, and files this Complaint, and in support thereof states as follows:

**I.     Parties**

1.   Plaintiff Elizabeth Brown (Ms. Brown), an adult formerly known as Elizabeth Stinson, is an American citizen and is domiciled in the State of Texas.

2.   Defendant Steelcase, Inc. (Steelcase), is a citizen of the State of Michigan because it has its principal place of business in Grand Rapids, Michigan.

**II.     Jurisdiction and Venue**

3.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a) because Ms. Brown's federal claim arises under federal law and Ms. Brown's state-law claim arises from the same occurrence as her federal claim.

4.   This Court has personal jurisdiction over Steelcase because Steelcase is a citizen of the State of Michigan.

1

5.  Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (c)(2) because Steelcase resides within this district.

### III.     Statement of Facts

6.  On March 7, 2022, Ms. Brown began full-time employment for Steelcase as an Applications Specialist, working chiefly from Steelcase's Dallas location.

7.  Ms. Brown's job duties included designing custom office layouts and furnishings, with a focus on custom wood casegoods.

8.  Steelcase paid Ms. Brown a gross salary of $90,000 per annum plus benefits and inclusion in a bonus structure.

9.  From the date of her hire through October 19, 2022, Ms. Brown was fully qualified for her job and completed her assigned duties competently without any need of disability-related accommodations.

10. During the week of October 17, 2022, Steelcase requested Ms. Brown's attendance at a training program at Steelcase's headquarters in Grand Rapids, Michigan.

11. On October 19, 2022, Ms. Brown was a passenger in a black Jeep Cherokee that she hired via the Uber app to transport her from her hotel in Grand Rapids, Michigan, to the training program training program at Steelcase's headquarters. Ms. Brown was seated in the second row of the vehicle (the "Uber") on the right-hand (passenger) side.

12. At or about 7:50 a.m. on October 19, 2022, through no fault of Ms. Brown, a negligent driver made an illegal turn, causing his vehicle to collide with the front-right portion of the Uber in which Ms. Brown was traveling.

13. As a result of the collision, Ms. Brown hit her head, her glasses flew off her face to the front of the Uber, her remaining personal possessions fell to the rear floor well, and she suffered a

concussion and a strained neck. As a direct result of the collision, Ms. Brown sustained a serious neurological injury.

14. Following the collision, the negligent driver received a citation for improper lane use.

15. Ms. Brown, understandably concerned that she would now be late for work, responded to the collision initially by returning to her hotel (the Uber had traveled less than one block between picking up Ms. Brown and becoming involved in the collision), calling a new rideshare vehicle, and proceeding to her training program.

16. By 11:45 a.m. that day, Ms. Brown felt overwhelmingly dizzy and experienced blurred vision, preventing her from participating in her training program. She then began to experience nausea and a tingling arm. As a result, around noon, she reasonably proceeded to make an appointment with the onsite wellness nurse at Steelcase headquarters. The wellness nurse was absent, so Ms. Brown ate a sandwich, which immediately induced vomiting. Ms. Brown returned to the wellness facility and received ice packs from a staff member at the wellness facility, who advised that she proceed to the emergency room if her symptoms did not subside.

17. Ms. Brown attempted to continue with her work programming, but her symptoms had not subsided even hours later. At approximately 4:30 p.m., a Steelcase training coordinator took Ms. Brown to a WellCare urgent-care facility. There, medical professionals advised that Ms. Brown undergo a CT scan, which that facility could not provide, so Ms. Brown was advised to proceed to the emergency room. As a result, the training coordinator then took Ms. Brown to the emergency room at Spectrum Health Hospitals Butterworth in Grand Rapids at approximately 6:00 p.m. on October 19, 2022.

18. The emergency room at Spectrum Health Hospitals Butterworth in Grand Rapids confirmed that Ms. Brown had suffered a concussion and cervical strain, placed her in a cervical collar, prescribed muscle relaxers, and advised her to see an orthopedist within five days.

19. Ms. Brown attempted to participate in her work training programs on October 20 and 21, 2022, but she remained unable to perform the required tasks on those dates because of diminished mental functioning. Ms. Brown previously would have had no trouble completing the projects given her knowledge base and skill sets, but her mental functioning at the time prevented her from processing information into the desired work product. As a result of her concussion, cervical strain, and other concomitant bodily injuries sustained in the collision, Ms. Brown was disabled: that is, she suffered substantial impairment of major life functions, namely her ability to work. She was then—and for at least several months thereafter—unable to perform functions that were integral to her job without reasonable accommodations for her disability.

20. Ms. Brown returned from Michigan to Texas (her home state) where she reasonably and necessarily proceeded to the emergency room at Baylor Scott & White Hospital in Frisco, Texas, on October 23, 2022, because her symptoms had still not subsided and because that was her only known means of received the follow-up orthopedic care that she had been advised to seek. She was there prescribed both muscle relaxers and anti-inflammatory medication, and she was referred to Affinity Neurocare, with whom she was initially able to schedule an appointment with a neurologist for October 31, 2022. Ms. Brown took time off from work until then, reasonably hoping that the situation would resolve such that she would be able then to resume her job with minimal disruption given the circumstances.

21. The neurologist required Ms. Brown to reschedule her appointment to November 7, 2022, so Ms. Brown attempted to return to work on October 31, but she was unable to perform her job

4

without accommodations due to ongoing symptoms of nausea, dizziness, pressure in the back of her head, fatigue, confusion, and delayed processing time. Ms. Brown's symptoms also included disorientation, tunnel vision, tingling in her arms, blurred vision, pain in her neck, limited range of motion, irregular sleep patterns, and a sharp increase in her blood pressure while at rest. As a result, she sought treatment via Steelcase's workers-compensation program, which she had not previously done because she had reasonably and in good faith hoped that her symptoms would subside and that her employment would be disrupted only minimally by the collision.

22. On November 1, 2022, Ms. Brown emailed Steelcase employee Angela Lindeman, the disability case manager who handles workers-compensation matters, to notify her that Ms. Brown was still experiencing "information recall delays, unprovoked elevated blood pressure (no previous history), blurred vision, [and] much lower ability to regulate emotions" due to the concussion she had sustained. Ms. Brown explained that she had secured an appointment with a neurologist for the following week but that, because her situation was impacting her to a greater degree than she anticipated, she needed to go ahead and work with workers compensation. Ms. Brown was assigned a case manager from Sedgwick (the workers compensation plan administrator for Steelcase), but that case manager (Pamela Drouin) was out of the office. After Ms. Brown persisted in requesting treatment through Ms. Lindeman, she commenced treatment at a Concentra facility in Texas on November 2, 2022.

23. With Sedgwick's approval as Steelcase's workers-compensation administrator, Ms. Brown had necessary follow-up medical appointments at Concentra facilities on November 4, 2022; November 18, 2022; December 5, 2022; December 19, 2022; January 13, 2023; February 13, 2023; March 13, 2023; October 17, 2023; and October 31, 2023. Follow-up care remains ongoing more than a year after the collision.

24. On November 7, 2022, Ms. Brown attended her previously scheduled neurology appointment at Affinity Neurocare, where Dr. Nnamdi Dike recommended that she take two weeks off of work and then return to work a maximum of four hours per day but only after additional testing had been done.

25. Ms. Drouin, the Sedgwick case manager, returned to the office on November 14, 2022. She honored Dr. Dike's recommendation but required Ms. Brown to see a Concentra-referred neurology provider (Lone Star Neurology) for follow-up. Despite great efforts, Ms. Brown was unable to secure an appointment any earlier than December 22, 2022.

26. In the meanwhile, on November 18, 2022, a Concentra doctor (Dr. Devki Jaiswal) reaffirmed the medical need for Ms. Brown to see a neurologist and reaffirmed that Ms. Brown's medical conditions required an accommodation of working no more than four hours a day for the time being.

27. As a result, from November 21, 2022, through December 14, 2022, Ms. Brown returned to work for four hours per day, but Steelcase subjected her to the expectation that she would nevertheless complete eight hours of work within those four hours each day. Steelcase knowingly or recklessly disregarded the doctors' orders. Steelcase employee Mary Cook (Ms. Brown's immediate supervisor) continually reprimanded Ms. Brown for failing to meet her expectations that she produce eight hours of work each day. This amounted to a constructive refusal to provide the required reasonable accommodation.

28. Shortly after she returned to work, on November 23, 2022, Ms. Brown expressed her concerns about this treatment to Megan Shilling (a Steelcase human resources manager) in an email, explaining that she was still waiting to be seen by the Concentra-referred neurologist (Lone

Star Neurology), that she was still awaiting treatment to help her return to work despite her symptoms, and that she was very fearful of retaliation in the interim.

29. Ms. Brown's symptoms continued to worsen. On December 2, 2022, due to the ongoing unregulated blood pressure that Ms. Brown was experiencing, her psychiatrist ordered that she stop taking her regularly prescribed Adderall (because of an increased risk of stroke), with the result that she was even less able to complete her workload under ordinary time constraints—that is, without a reasonable accommodation.

30. On December 5, 2022, when Ms. Brown went back to Concentra for follow-up care, Dr. Jaiswal reaffirmed the four-hour-per-day restriction and also ordered Steelcase to "allow for additional time to complete tasks if needed."

31. On December 8, 2022, Ms. Brown emailed her concerns about being expected to produce eight hours of work in four hours to Ms. Shilling.

32. On December 9, 2022, Ms. Brown had a call with Ms. Cook, who reiterated that because Ms. Brown's restrictions stated only that she was permitted to work four hours a day, she was still expected to perform at the same capacity as though she were working a full eight-hour day.

33. On December 14, 2022, Ms. Lindeman informed Ms. Brown that she should stay home from work until she saw the neurologist at Lone Star Neurology.

34. On December 22, 2022, Ms. Brown saw Dr. Riaz Tadia at Lone Star Neurology. Dr. Tadia performed testing, prescribed medication, and ordered that Ms. Brown remain home from work until after a review of an MRI (which was schedule for and performed on December 29, 2022) and until after a follow-up appointment (which was scheduled for and provided on January 26, 2023).

35. At Ms. Brown's follow-up appointment with Concentra on January 13, 2023, the Concentra provider reaffirmed Ms. Brown's medical need to work no more than four hours a day for the time being and the need to continue specialist care with the neurologist.

36. On January 17, 2023, Ms. Lindeman emailed Ms. Brown and stated that Steelcase **would not accept** Ms. Brown's return to work with a temporary accommodation of a four-hour-per-day work schedule.

37. Steelcase, through its agents, wrongfully and in bad faith denied Ms. Brown her requested medical accommodation.

38. Steelcase, through its agents, wrongfully and in bad faith declined to provide an interactive process through which Steelcase and Ms. Brown might have developed an alternative medical accommodation that was more acceptable to Steelcase.

39. A part-time work schedule of four hours a day, for a limited duration so as to facilitate Ms. Brown's continued employment during her recovery, which Ms. Brown requested, was a reasonable accommodation necessary to mitigate Ms. Brown's disability.

40. A part-time work schedule of four hours a day, for a limited duration so as to facilitate Ms. Brown's continued employment during her recovery, would not have caused any undue hardship to Steelcase.

41. A part-time work schedule of four hours a day, for a limited duration so as to facilitate Ms. Brown's continued employment during her recovery, would have been sufficient to permit Ms. Brown to complete her job duties fully and competently. Ms. Brown was able to perform the essential functions of her job with this or a similarly reasonable accommodation.

42. On January 26, 2023, because Steelcase was unwilling to accommodate Ms. Brown's medical needs, Ms. Brown asked the Concentra-referred neurologist (Dr. Tadia) to order something

8

else instead. As a result, and only because Ms. Brown perceived that she had no other option if she wished to keep her job, Dr. Tadia recommended an accommodation of 15-minute breaks each hour throughout the day.

43. Ms. Brown returned to work from January 30, 2023, through February 28, 2023, with only the 15-minute-break accommodation. During that time, Ms. Brown was fearful for her job because she was not receiving the same kinds of assignments that she had previously been receiving. Nor was the 15-minute break alleviating her disability in the first place. As a result, Ms. Brown requested that accommodation to be removed during her March 13, 2023, follow-up appointment with Concentra. Ms. Brown did not in any way indicate that her treatment was resolved or that she was "better," but she was nevertheless returned to work with no restrictions whatsoever.

44. On March 16, 2023, Steelcase placed Ms. Brown on a Performance Improvement Plan ("PIP") for 45 days. While on the PIP, Ms. Brown was consistently given negative feedback even when it was not based on the facts of her performance, and whenever Ms. Brown asked questions, she was criticized for asking questions. Also, during that time, all of Ms. Brown's peers in her region were invited to participate in a regional meeting; Ms. Brown was the only employee in her peer group who was not invited to attend, indicating Steelcase's intent not to continue Ms. Brown's employment and Steelcase's bad faith in purporting to place Ms. Brown on a PIP.

45. For the duration of her 45 days on the PIP, Ms. Brown reasonably perceived that there was no possible way for her to complete her job successfully.

46. Unsurprisingly, Steelcase terminated Ms. Brown's employment on May 2, 2023.

47. Ms. Brown reasonably believes that she was terminated because Steelcase was unwilling to provide the necessary medical accommodations that she needed to return to work and perform her essential functions competently.

48. But for Steelcase's refusal to adopt the physician's four-hour-a-day accommodation, Ms. Brown would not have been terminated.

49. As of the date of this filing, Ms. Brown continues to suffer symptoms of the collision and concomitant concussion, but her symptoms have improved drastically. On October 17, 2023, and October 31, 2023, for instance, the Concentra provider indicated that Ms. Brown was permitted to resume full work days with only a restriction on driving or operating heavy equipment, which is not germane to Ms. Brown's line of work.

50. Ms. Brown's termination caused Ms. Brown actual damages in the form of lost wages, emotional distress, loss of enjoyment of life, mental anguish, and reputational harm.

51. On June 30, 2023, Ms. Brown filed a charge of discrimination with the Dallas District Office of the United States Equal Employment Opportunity Commission (EEOC), substantially setting forth the allegations made herein. The EEOC assigned Charge Number 450-2023-07287 and filed the charge on August 31, 2023. On September 27, 2023, the EEOC issued a Notice of Right to Sue, entitling Ms. Brown to file this complaint within 90 days thereafter. A copy of this Notice is attached hereto as **Attachment A**. This complaint is, therefore, timely filed.

IV.     **Causes of Action**

**COUNT I – DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA), 42 U.S.C. § 12101 *et seq.***

52. Ms. Brown incorporates by reference all of the proceeding paragraphs of this Complaint as though they had been set forth herein individually and in full.

53. On January 17, 2023, Steelcase violated Ms. Brown's rights under the ADA by refusing to provide a reasonable medical accommodation that Ms. Brown requested and that would not have caused Steelcase undue hardship.

54. On May 2, 2023, Steelcase violated Ms. Brown's rights under the ADA by terminating her due to her disability despite Ms. Brown's ability to perform the essential functions of her job had she been provided her requested reasonable medical accommodation.

Wherefore, based on the foregoing facts, Ms. Brown respectfully requests that this Court enter a judgment consisting of an award of all damages available by law, in favor of Ms. Brown and against Steelcase, plus interest and costs.

## COUNT II – DISCRIMINATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (PDCRA), MCL § 37.1101 *et seq.*

55. Ms. Brown incorporates by reference all of the proceeding paragraphs of this Complaint as though they had been set forth herein individually and in full.

56. On January 17, 2023, Steelcase violated Ms. Brown's rights under the PDCRA by refusing to provide a reasonable medical accommodation that Ms. Brown requested and that would not have caused Steelcase undue hardship.

57. On May 2, 2023, Steelcase violated Ms. Brown's rights under the PDCRA by terminating her due to her disability despite Ms. Brown's ability to perform the essential functions of her job had she been provided her requested reasonable medical accommodation.

Wherefore, based on the foregoing facts, Ms. Brown respectfully requests that this Court enter a judgment consisting of an award of all damages available by law, in favor of Ms. Brown and against Defendants, plus interest and costs.

## V.     Prayer for Relief

Wherefore, based on the foregoing, Ms. Brown demands the following relief: (a) past and future lost wages; (b) decrease in earning capacity; (c) emotional distress; (d) mental anguish; (e) reputational harm; (f) loss of enjoyment of life; (g) attorney's fees; and (h) all damages authorized at law or equity.

**Date**:   November 19, 2023

Respectfully submitted,

/s/   Kyle Singhal
Kyle Singhal (Bar No. 1601108)
HOPWOOD & SINGHAL PLLC
1701 Pennsylvania Ave., N.W.
Suite 200
Washington, DC 20006
(817) 212-9041
kyle@hopwoodsinghal.com
*Counsel for Plaintiff*

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Ms. Elizabeth Brown**
**4137 Comanche Dr.**
**Carrollton, TX 75010**

From: **Dallas District Office**
**207 S. Houston Street, 3rd Floor**
**Dallas, TX 75202**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **450-2023-07287** | **Yolanda Brown,** <br> **EO Investigator** | **(972) 918-3634** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

***Equal Pay Act (EPA):*** *You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Travis M. Nicholson
09/27/2023

**Travis M. Nicholson**
**District Director**

Enclosures(s)

cc: **John Brown, Attorney**
**Steelcase Inc.**
**901 44th St SE**
**Grand Rapids, MI 49508**
Jbrown12@steelcase.com

**Cindy LaBaza, Attorney**
**Steelcase Inc.**
**901 44th St. SE**
**Grand Rapids, MI 49508**
**cindy.labaza@steelcase.com**

**Kyle Singhal, Attorney**
**Hopwood & Singhal, PLLC**
**1701 Pennsylvania Ave. N.W., Suite 200**
**Washington, DC 20006**
**kyle@hopwoodsinghal.com**

## ATTACHMENT A